IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff-Respondent,<br><br>    v.<br><br>ALEXANDER HERNANDEZ,    (01)<br><br>                    Defendant-Petitioner. | CR. NO. 20-00098 JMS-RT-01<br>CIV. NO. 25-00059 JMS-RT<br><br>ORDER (1) DENYING MOTION<br>TO VACATE, SET ASIDE, OR<br>CORRECT SENTENCE<br>PURSUANT TO 28 U.S.C. § 2255,<br>ECF NO. 523; AND (2) DENYING<br>CERTIFICATE OF<br>APPEALABILITY |

## ORDER (1) DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255, ECF NO. 523; AND (2) DENYING CERTIFICATE OF APPEALABILITY

## I.  INTRODUCTION

Currently before the court is pro se Defendant-Petitioner Alexander Hernandez's ("Defendant") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion").  ECF No. 523.  For the reasons discussed below, the court DENIES the § 2255 Motion and DENIES a Certificate of Appealability.

## II.  BACKGROUND

### A.    Factual Background

On October 15, 2020, Defendant was charged in an Indictment with two counts: (1) conspiring to distribute and possess with intent to distribute 50

grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(A) and 846 (Count 1); and (2) distribution of 50 grams or more of

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count

11). ECF No. 18.

On February 16, 2023, pursuant to a plea agreement, Defendant pled

guilty to Count 1 in return for the dismissal of Count 11 and an agreement by the

government not to prosecute Defendant for drug offenses arising out of a Central

District of California investigation. ECF No. 347.[1] Also as part of the plea

agreement, Defendant stipulated to facts relating to the Central District of

California investigation. *Id.* at PageID.1408, 1417–1419.

The Presentence Report held Defendant accountable for a total of

3,263 grams of actual methamphetamine and 58,868 grams of generic

methamphetamine. ECF No. 420 at PageID.2085. With a converted drug weight

of 182,998 kilograms, Defendant's base offense level was 38. *Id*. The court then

applied a two-level increase for possession of a dangerous weapon under United

States Sentencing Guideline ("guideline") § 2D1.1(b)(1), *id.* at PageID.2085–2086,

and a three-level increase for Defendant's role in the offense under guideline

---

[1] The Presentence Report sets forth facts relating to a "Central District of California
Investigation," and separately discusses facts relating to a "District of Hawaii Investigation."
ECF No. 420 at PageID.2074–2083. The parties stipulated in the plea agreement that the
uncharged conduct relating to the Central District of California investigation constituted relevant
conduct to the charged conduct and could be considered by the court under 18 U.S.C. § 3553(a)
at sentencing. ECF No. 347 at PageID.1408.

§ 3B1.1(b), *id*. at PageID.2086.  After receiving a three-level decrease for

acceptance of responsibility under guideline § 3E1.1, Defendant's total offense

level was 40.  *Id*.  With a criminal history category I, Defendant's advisory

guideline range was of 292 to 365 months.  *Id*. at PageID.2087; ECF No. 454 at

PageID.2205.  After considering the relevant 18 U.S.C. § 3553(a) factors, and a

motion filed by the government, ECF No. 448, the court imposed a below-

guideline sentence of 180 months.  ECF No. 453.

**B.    Procedural Background**

On February 10, 2025, Defendant filed his timely § 2255 Motion, and

on March 4, 2025, he filed a Supplement to his Motion.  ECF Nos. 523, 525.  The

United States filed a Response on March 28, 2025, and the court received

Defendant's Reply on April 30, 2025.  ECF Nos. 527, 528.

## III.  SECTION 2255 LEGAL STANDARDS

The court's review is governed by 28 U.S.C. § 2255(a), which

provides:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be
> released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the
> sentence.

A court may deny a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." R. 4(b) Governing § 2255 Proceedings in the U.S. Dist. Cts. A court need not hold an evidentiary hearing if the allegations are "palpably incredible" or "patently frivolous or false" or if the issues can be conclusively decided based on the evidence in the record. *Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (internal quotation and citation omitted); *see also United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998) (explaining that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). A petitioner must allege specific facts that, if true, would entitle the petitioner to relief. *See United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (citing *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)).

Because the court concludes that the § 2255 Motion can be decided conclusively based on the existing record, the court will not hold an evidentiary hearing. Further, the court decides the § 2255 Motion without a hearing pursuant to Local Rule 7.1(d).

# IV. <u>ANALYSIS</u>

## A.    Legal Standard of Ineffective Assistance of Counsel

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding, including sentencing. *See United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997). To prevail on an ineffective assistance of counsel claim, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). That is, the petitioner must show not only that there was a deficiency, but that the deficiency was prejudicial. *Id*. at 692; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."). "[I]t is unnecessary to consider the prejudice prong of *Strickland* if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998) (citing *Hendricks v. Calderon*, 70 F.3d 1032, 1039 (9th Cir. 1995)).

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually

unchallengeable; and strategic choices made after less than complete investigation

are reasonable precisely to the extent that reasonable professional judgments

support the limitations on investigation." *Id*. at 690–91. "A fair assessment of

attorney performance requires that every effort be made to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged

conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at

689.

Courts "assess a particular decision not to investigate or to limit the

scope of investigation for reasonableness." *Waidla v. Davis*, 68 F.4th 575, 585

(9th Cir. 2023). "While a lawyer is under a duty to make reasonable

investigations, a lawyer may make a reasonable decision that particular

investigations are unnecessary." *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th

Cir. 1988). Thus, "[i]n assessing the reasonableness of an attorney's

investigation . . . , a court must consider not only the quantum of evidence already

known to counsel, but also whether the known evidence would lead a reasonable

attorney to investigate further." *Wiggins*, 539 U.S. at 527; *see also White v. Ryan*,

895 F.3d 641, 670 (9th Cir. 2018).

Conclusory allegations of ineffective assistance of counsel made with

no factual or legal explanation fall well short of stating a cognizable claim for

ineffective assistance of counsel. *See Blackledge*, 431 U.S. at 74 ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .").

**B.    Defendant's Allegation of Ineffective Assistance of Counsel**

Defendant claims that his counsel was ineffective for failure to object in three areas: (1) the three-level enhancement under the guidelines based on Defendant's role in the offense; (2) the two-level enhancement based Defendant's possession of a dangerous weapon; and (3) the quantity of methamphetamine Defendant was held accountable for under the guidelines. The court addresses each in turn.

**1.    *Role in the Offense***

At sentencing, the court applied a three-level enhancement under guideline § 3B1.1(b) based on a finding that Defendant was "a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." Presentence Report, ECF No. 420 at PageID.2086. Specifically, the Presentence Report states:

> To qualify for an adjustment under this section, the defendant must have been the manager or supervisor of one or more other "participants," which is defined as a person who is "criminally responsible for the commission of the offense, but need not have been convicted." USSG §3B1.1, Application Notes 1 and 2. In this case, the investigation established that the defendant was a manager and a supervisor of a drug conspiracy involving

7

> at least five participants in the Central District of
> California.  In that case, the defendant recruited and
> directed Arias, Pinedo, and an unidentified individual to
> work as couriers for drugs and drug proceeds.  At the
> defendant's instruction and arrangement, the three
> individuals flew from California to Ohio and Hawaii to
> meet with the defendant's coconspirators.  Therefore, a
> 3-level increase is applied.

*Id*.[2]  Defendant now claims that his counsel should have objected to and challenged

this finding because "none of his co-conspirators or any other individuals worked

or operated trafficking of drugs—under the direction of Mr. Hernandez.  He

exercised no . . . control whatsoever over any one of his co-conspirators."  ECF

No. 523 at PageID.2850.  For the following reason, the court disagrees.

A three-level enhancement applies under guideline § 3B1.1(b) "[i]f

the defendant was a manager or supervisor (but not an organizer or leader) and the

criminal activity involved five or more participants or was otherwise extensive."

Application Note 1 defines a "participant" as "a person who is criminally

responsible for the commission of the offense, but need not have been convicted.

A person who is not criminally responsible for the commission of the offense (e.g.,

an undercover law enforcement officer) is not a participant."  A defendant need not

be actually aware of specific participants—it is sufficient that the defendant is a

manager or supervisor of "one or more other participants," and the criminal

---

[2]  At sentencing, the court adopted the factual findings of the Presentence Report, as well
as its conclusions as to the guidelines, as its own findings.  ECF No. 527-1 at PageID.2905.

activity in fact involved five or more participants. *See* guideline § 3B1.1,

application note 1; *United States v. Dota*, 33 F.3d 1179, 1189 (9th Cir. 1994)

("Section 3B1.1 does not require that Dota knew of or exercised control over all

the participants. Rather, the section requires a finding only that Dota was an

'organizer or leader' of a criminal activity that involved five or more

participants."); *United States v. Kamoga*, 177 F.3d 617, 621 (7th Cir. 1999);

*United States v. Kirk Tang Yuk*, 885 F.3d 57, 83 (2d Cir. 2018).

      To apply the manager or supervisor enhancement, "the government

must demonstrate that the defendant oversaw one or more other participants . . . ."

*United States v. Gadson*, 763 F.3d 1189, 1222 (9th Cir. 2014) (internal quotations

omitted); *see also United States v. Perez*, 962 F.3d 420, 453 (9th Cir. 2020) ("The

district court was also correct in concluding that [the defendant] was a 'manager or

supervisor' because he oversaw and exercised some control over one or more of

the other participants."). In making this determination, Application Note 4 sets

forth relevant factors to consider:

> In distinguishing a leadership and organizational role
> from one of mere management or supervision, titles such
> as "kingpin" or "boss" are not controlling. Factors the
> court should consider include the exercise of decision-
> making authority, the nature of participation in the
> commission of the offense, the recruitment of
> accomplices, the claimed right to a larger share of the
> fruits of the crime, the degree of participation in planning
> or organizing the offense, the nature and scope of the
> illegal activity, and the degree of control and authority

exercised over others.  There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.  This adjustment does not apply to a defendant who merely suggests committing the offense.

In paragraph 9 of the plea agreement, Defendant admitted, among others, that the following facts are true:

a.  Beginning in early 2018, and continuing until on or about July 24, in Los Angeles County, within the Central District of California, and elsewhere, the defendant, Eric Pinedo, Abraham Arias, and other co-conspirators, conspired and agreed with each other to knowingly and intentionally distribute, and possess with intent to distribute more than 50 grams of pure methamphetamine.

b.  Specifically, in early 2018, the defendant recruited Arias as a courier to transport narcotics proceeds and narcotics for the defendant on round trips from Southern California to other states by commercial airline flights. The defendant sent Arias on two trips of this type in which the defendant provided luggage to Arias on round [trips] leaving from Southern California and arriving, respectively, in Columbus, Ohio, and Hawaii.  The defendant helped arrange for this courier to meet with the defendant's co-conspirators in other[] states as part of the transportation and distribution of narcotics and narcotics proceeds.  The defendant drove Arias to the airport, picked Arias up from the airport, and paid Arias for these trips as the defendant's narcotics courier.

c.  In addition, on or about July 22 and July 23, 2018, at the defendant's suggestion and with the defendant's approval, Arias recruited another drug courier, Pinedo, to make a trip for the defendant to transport methamphetamine to Hawaii.  On the morning of July 24, 2018, the defendant and Arias put a suitcase which the defendant knew contained methamphetamine within it, in

10

the trunk of Arias' Volkswagen Jetta and picked up
Pinedo in that vehicle.  The defendant drove with Pinedo
and Arias to a Wal-Mart in Pico Rivera, California to
purchase clothes for Pinedo to put in the suitcase.  The
defendant, Pinedo, and Arias then filled the suitcase
containing the methamphetamine, specifically 2,454
grams of pure methamphetamine, with the clothes from
Wal-Mart.

d.  The defendant drove with Pinedo and Arias to the
Burbank Airport, and dropped off Pinedo, so that Pinedo
could take a flight with the suitcase from Burbank,
California to Honolulu, Hawaii to deliver the
methamphetamine in the suitcase to other people.  After
Pinedo entered the airport with the suitcase containing
the methamphetamine, defendant exchanged texts with
Pinedo and Arias about the progress of Pinedo's trip.

ECF No. 347 at PageID.1417–1419.  These facts—again, all admitted by

Defendant as true—show that he was the manager or supervisor of at least one

participant in the conspiracy.  That is, Defendant admitted that he *recruited* Arias

as a courier to transport narcotics and narcotics proceeds and admitted that he then

*sent* Arias on two trips from California to Ohio and Hawaii.  These admissions

demonstrate that Defendant oversaw and exercised control over Arias.[3]

---

[3]  Likewise, these admissions fully undermine Defendant's claims that there was no
"evidence whatsoever that supports the conclusion that somehow [Defendant] exercised control
over his co-conspirators or that they were working under his direction or for him," ECF No. 523
at PageID.2853, and that "[n]o one worked for me or I exercised control over . . . ."  ECF No.
525-1 at PageID.2864.  *See Blackledge v. Allison*, 431 U.S. 63, 65 (1977) ("Solemn declarations
in open court carry a strong presumption of verity.  The subsequent presentation of conclusory
allegations unsupported by specifics is subject to summary dismissal, as are contentions that in
the face of the record are wholly incredible."); *United States v. Ross*, 511 F.3d 1233, 1236 (9th
Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong

(continued…)

Defendant's admissions also prove that there were five or more participants

involved in the criminal conduct: Defendant, Arias, Pinedo, and at least two co-

conspirators in Ohio and Hawaii. *See* ECF No. 347 at PageID.1418 ("The

defendant helped arrange for [Arias] to meet with defendant's co-conspirators in

other states as part of the transportation and distribution of narcotics and narcotics

proceeds.").[4]  Given these facts, any objection by counsel to the three-level role in

the offense enhancement would have been meritless.  And, as is obvious, "[t]he

failure to raise a meritless legal argument does not constitute ineffective assistance

of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982); *see*

*also Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) (same); *Martinez*

*v. Ryan*, 926 F.3d 1215, 1226 (9th Cir. 2019) (same).  Counsel's performance was

neither deficient nor prejudicial.

---

presumption of veracity in subsequent proceedings attacking the plea."); *United States v. White*,
366 F.3d 291, 297 (4th Cir. 2004) ("[A] court can summarily dismiss allegations of a petitioner
who attempts to challenge statements made during a plea colloquy or in his plea agreement.").

[4]  Although the court relied on the California-based conspiracy to make a finding as to
Defendant's role in the offense, it is equally clear that he was a manager or leader of the Hawaii
criminal activity that involved five or more participants.  Defendant admitted to investigators that
he oversaw and exercised control over at least one other person—that is, he arranged for others
to mail parcels containing methamphetamine to Hawaii.  *See* ECF No. 420 at PageID.2081. And
that conspiracy involved five or more persons.  *Id.* at PageID.2076–2083.  This is an independent
reason to deny Defendant's motion as to his role in the offense.

### 2.    *Possession of a Dangerous Weapon*

At sentencing, the court applied a two-level enhancement under

guideline § 2D1.1(b)(1) based on a finding that Defendant possessed a firearm.

Defendant now argues that his counsel "was ineffective for failure to investigate

and present exculpatory evidence that—could have shown the gun found in

[Defendant's] residence had—nothing to do with his participation in the drug

trafficking conspiracy." ECF No. 523 at PageID.2858. For the following reasons,

the court disagrees.

As a specific offense characteristic to the drug guideline, "[i]f a

dangerous weapon (including a firearm) was possessed, increase by [two] levels."

Guideline § 2D1.1(b)(1). In applying this enhancement, the court need not find a

connection between the firearm and the offense, *United States v. Restrepo*, 884

F.2d 1294, 1296 (9th Cir. 1989), and carrying of the weapon is not required.

*United States v. Lopez-Sandoval*, 146 F.3d 712, 714–15 (9th Cir. 1998).

"The government must prove possession by a preponderance of the

evidence before the court can apply the two-level increase under § 2D1.1(b)(1).

Then, once the government demonstrates that a defendant possessed a dangerous

weapon, . . . the burden of proof is on the defendant to prove that it is 'clearly

improbable' that he possessed a weapon in connection with the offense." *United*

*States v. Baldon*, 956 F.3d 1115, 1127 (9th Cir. 2020) (internal citation and

13

quotation marks omitted).[5]  "Under our case law, the government does not have to establish that the defendant possessed the firearm for the purpose of protecting or facilitating the drug transaction.  Indeed, the firearms need not be involved in the crime of conviction." *United States v. Gomez*, 6 F.4th 992, 1010 (9th Cir. 2021) (internal quotation marks omitted).  And "[w]here a defendant is convicted of conspiracy, the firearm enhancement can be based on all of the offense conduct, not just the crime of conviction." *United States v. Boykin*, 785 F.3d 1352, 1364 (9th Cir. 2015).[6]

---

[5]  "[T]he language of the Guidelines does *not* require that a *connection* be shown.  Rather, it requires only that the weapon be possessed during commission of the offense." *United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir. 1989).  "[Application Note 11(A)], therefore, creates an exception to the terms of the Guideline," and creates the "clearly improbable" standard.  *Id.*; *see also, e.g.*, *United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014) ("The Guideline itself does not require a connection between the firearm and the drug offense, but requires only that the firearm was "possessed" by the defendant. . . . The commentary elaborates on the possession requirement . . . . ").

In relevant part, Application Note 11(A) reads: "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet."  Guideline § 2D1.1(b)(1), Application Note 11(A).  Neither party addressed whether Application Note 11(A) remains valid in light of *Kisor v. Wilkie*, 588 U.S. 558 (2019) and *United States v. Castillo*, 69 F.4th 648 (9th Cir. 2023) (finding that only if guideline language is "genuinely ambiguous" does a court resort to consideration of guideline commentary).  Regardless, because Application Note 11(A) limits the application of § 2D1.1(b)(1), and because Defendant cannot prevail even considering Application Note 11(A), the court need not determine its continuing validity here (i.e., whether § 2D1.1(b)(1) is "genuinely ambiguous").

[6]  Defendant's argument assumes—incorrectly—that the government is required to prove a "connection between the gun and criminal activities of Mr. Hernandez."  ECF No. 528 at PageID.2915.  As stated above, "the initial burden on the government to show some form of possession, after which the defendant has the burden to show that it is clearly improbable that the possession was connected to the offense." *United States v. Nelson*, 222 F.3d 545, 551 (9th Cir. 2000); *see also United States v. Gomez*, 6 F.4th 992, 1010 (9th Cir. 2021).

Relevant factors to consider in making the "clearly improbable" determination include: "(1) the type of gun involved, with clear improbability less likely with handguns than with hunting rifles; (2) whether the gun was loaded; (3) whether the gun was stored near the drugs or drug paraphernalia; and (4), most relevant to our inquiry here, whether the gun was accessible." *See United States v. Drozdowski*, 313 F.3d 819, 822–23 (3d Cir. 2002) (internal citations and parentheticals omitted); *see also United States v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010).

The facts are as follows:  On July 16, 2020, Defendant was arrested and agreed to speak to law enforcement.  He admitted to his drug dealing activities, and "informed investigators that he had a firearm and $18,000 in cash at his residence.  He initially stated that he possessed the pistol for protection, but later said he 'just likes guns.'  He claimed that the money was from buying and selling cars."  Presentence Report, ECF No. 420 at PageID.2081–2082.

Then, also on July 16, 2020, a search warrant was executed at Defendant's residence located in Bell Gardens, California.  Although no drugs were found, agents recovered $18,000 from a safe in Defendant's bedroom and "a 9mm Ruger P95 semiautomatic pistol, bearing serial number 317-65018, which was loaded with 15 rounds of ammunition, from a shelf above the safe."  *Id*. at PageID.2082.  And although Defendant denied that the $18,000 was drug-related

15

in his July 16, 2020 statement, he later agreed to forfeit those funds,

acknowledging that they constituted drug proceeds.[7]  *See* ECF No. 347 at

PageID.1425.  Further, Defendant had instructed a co-defendant to mail $4,250 to

Defendant's Bell Garden residence in exchange for one-half pound of

methamphetamine.  ECF No. 420 at PageID.2081.  Those funds arrived at

Defendant's residence on June 29, 2020.  *Id.*

　　　　　At sentencing, defense counsel objected to application of the two-

level enhancement.  Specifically, defense counsel referenced "threats to

[Defendant's] family" as the reason he possessed the firearm.  ECF No. 514 at

PageID.2800.  The court stated that it could "accept that there were threats to

[Defendant's] family," but that the "clearly improbable" standard was a high bar

given the totality of the facts before the court, including the presence of the loaded

firearm, drug activity being conducted in the house (the possession of drug

---

[7]  In an affidavit in support of his § 2255 Motion, Defendant again denies that the
$18,000 constituted drug proceeds.  ECF No. 525-1 at PageID.2865.  This statement is
inconsistent with Defendant's plea agreement, where he admitted that the funds represented
illegal drug proceeds.  Defendant agreed to forfeit his interest in the $18,000 as "part of his
acceptance of responsibility" and agreed that those funds were

　　　subject to forfeiture pursuant to 21 U.S.C. § 853 as (1) property
　　　constituting, or derived from, proceeds the person obtained, directly or
　　　indirectly, as the result of a violation of the provisions of 21 U.S.C. §§ 801
　　　et seq. or 21 U.S.C. §§ 951 et seq.; and (2) property used, or intended to be
　　　used, in any manner or part, to commit, or to facilitate the commission of,
　　　such violation.

ECF No. 347 at PageID.1425.

proceeds), and that Defendant made an initial statement that he possessed the

firearm for protection.  *Id*.  The court asked defense counsel if he had any evidence

to present on this issue, to which he stated, "[w]e don't."  *Id*.

At sentencing, the court first determined that Defendant possessed a

firearm, and then rejected the contention that it was "clearly improbable" that

Defendant possessed the firearm in connection with the offense.  Specifically, the

court reasoned:

> Here we have a loaded pistol.  It was in the vicinity of
> this $18,000 drug proceeds that were on the premises.
> The defendant made a statement that it was for his
> protection and this premise was used in the drug trade.
> So the defense has come nowhere near showing that it's
> clearly improbable that the possession was connected to
> the offense.

*Id*. at PageID.2802–2803.

Defendant now claims that his counsel should have further

investigated the relationship between his drug dealing and the seized firearm.  For

instance, he argues that: (1) the $18,000 in the safe was from "his saving from his

legal employment"; (2) that he decided to have a firearm after a "direct threat on

his family occurred"; and (3) no contraband was found at the residence during the

search of his home.  ECF No. 523 at PageID.2857.  Defendant also attaches two

affidavits—one by himself and one by his fiancée, Rebecca Ortiz.  *See* ECF No.

525-1 at PageID.2864, ECF No. 528-1.  Both state that Defendant obtained the

firearm out of fear someone might break into their house after a fire was set to their home. *Id*. Ortiz states that Hernandez obtained the firearm in approximately late April 2019, and that he told her that he "preferred to keep [the firearm] in our bedroom for our protection especially at night," and that she never saw Defendant with drugs or dealing drugs at home. *Id*. at PageID.2919.

Defendant also claims that, although the court inquired as to whether the defense had any evidence to present, counsel never consulted with Defendant. From this, Defendant suggests that he would have testified at sentencing that he only possessed the firearm due to threats unrelated to his drug dealing. But the law is clear that Defendant has waived this argument:

> Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify. The trial court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred. Rather, if the defendant wants to testify, he can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer. Thus, waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so.

*United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (internal citations and quotation marks omitted); *see also United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993) (finding no ineffective assistance for counsel's failure to advise

defendant of his right to testify because when "a defendant is silent in the face of his attorney's decision not to call him as a witness, he has waived the right to testify"); *United States v. Gillenwater*, 717 F.3d 1070, 1080 (9th Cir. 2013) (stating that a defendant waives his right to testify "when defense counsel elects not to call the defendant as a witness, and despite being present, the defendant takes no affirmative action to demonstrate his disagreement with his counsel's decision not to call him as a witness"). Here, Defendant failed to indicate any disagreement with defense counsel's decision not to call him as a witness.

The version of facts Defendant now presents (which, presumably, he argues could have been presented had counsel conducted a full investigation) simply do not support a claim that counsel was ineffective. In reality, counsel had no plausible argument to make—with or without further "investigation"—that the two-level enhancement should not have applied. Given that a loaded firearm was easily accessible and in the vicinity of a safe containing $18,000 in drug proceeds,[8] Defendant could not have satisfied his burden to show that it was "clearly improbable" that the firearm was connected to the drug offense. The standard

---

[8] Defendant's admission in the plea agreement that the $18,000 constituted drug proceeds undermines his present claim that the funds were obtained from a legitimate source. *See Blackledge v. Allison*, 431 U.S. 63, 65 (1977); *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008).

requires proof not just that the nexus is improbable—it must be "clearly"
improbable.

And even if the court accepts Defendant's claim that he initially
purchased the firearm for protection unrelated to drug dealing and that the $18,000
was obtained from a legitimate source, he still fails on the *Strickland* prejudice
prong. Given—(1) Defendant's status as a large-scale drug trafficker from early
2019 through his arrest in July 2020;[9] (2) that Defendant received $4,250 of drug
proceeds at his home on June 29, 2020;[10] (3) that Defendant obtained a 9mm Ruger
semiautomatic pistol in approximately late April 2019; and (4) that the Ruger was
located in Defendant's bedroom on July 16, 2020, loaded with 15 rounds of
ammunition—Defendant could not meet his burden to show that it was clearly
improbable that he possessed the firearm in connection with the offense. *See*
*United States v. Willard*, 919 F.2d 606, 610 (9th Cir. 1990) ("Our court has not
required guns and drugs to be found in proximity to each other, in order to support

---

[9]  In the memorandum of plea agreement, Defendant admitted that between
January 2019 until the start of the Covid-19 pandemic, he flew to Hawaii twice a month
and provided James Ferreira with six pounds of methamphetamine each trip. ECF No.
347 at PageID.1412. Between June 16 and July 3, 2020, Defendant arranged to mail one-
half pound of methamphetamine to Ferreira. *Id*. at PageID.1415–1416. And as late as
July 6 and 7, 2020, Ferreira communicated with Defendant to introduce him to a new
drug distributor. *Id*. at PageID.1416. In total, Defendant was held responsible at
sentencing for the distribution of over 62,000 grams (over 136 pounds) of
methamphetamine. ECF No. 420 at PageID.2085.

[10]  Although Defendant claims that the $18,000 recovered from the safe was
obtained by selling cars, he does not dispute that he received $4,250 of drug proceeds at
his Bell Garden residence on June 29, 2020. ECF No. 420 at PageID.2081.

a firearm enhancement."); *Gomez*, 6 F.4th at 1008 (same).  In short, even if defense

counsel presented the evidence that Defendant now puts forward, and even if the

court accepted that evidence as true, the two-level enhancement would still apply.

Any deficient performance was not prejudicial.  As a result, this claim fails.

### 3.    *Guideline Calculation of Drug Quantity*

At sentencing, Defendant was held responsible for 3,263 grams of

actual methamphetamine and 58,868 grams of generic methamphetamine.  ECF

No. 420 at PageID.2085.  The converted drug weight totaled 182,998 kilograms,

resulting in a base offense level 38 under guideline § 2D1.1(c)(1).  *Id*.  Defendant

now argues that his counsel was ineffective for failing to argue that the actual

methamphetamine should have been treated as generic methamphetamine, and that

had he done so, he would have a base offense level of 34, not 38.[11]  ECF No. 525.

This argument fails for several reasons.

First, the Presentence Report correctly determined that the 3,263

grams of methamphetamine was "actual" methamphetamine under the guidelines.

Defendant admitted that, as part of the Hawaii investigation, he was responsible for

774.5 grams of actual methamphetamine.  *See* ECF No. 347 at PageID.1413, 1414,

& 1416 (calculating the sum of the amounts of methamphetamine in paragraphs 9

---

[11]  To be clear, Defendant does not challenge the amounts of methamphetamine for which
he was held responsible.  Instead, he only challenges the characterization of the 3,263 grams as
actual methamphetamine as opposed to generic methamphetamine.

d, e, f, and i of the plea agreement).  Defendant also agreed, as part of the

California investigation, that he was responsible for 2,488.6 grams of actual

methamphetamine.  *Id*. at PageID.1419.[12]  Thus, Defendant agreed that he was

responsible for a total of 3,263.1 grams of actual methamphetamine.  Given this

history, there was simply no basis for Defendant's counsel to object to the

guideline calculations.

Second, even if the "actual" methamphetamine is not included in the

total drug weigh calculation, Defendant would remain at a base offense level 38.

The generic methamphetamine (58,868.2 grams) converts to 117,998.4 kilograms.

*See* ECF No. 420 at PageID.2085.  And under guideline § 2D1.1, a base offense

level 38 applies to 90,000 kilograms or more of converted drug weight.  Thus,

whether counting or excluding the actual methamphetamine, Defendant would still

be at a base offense level 38.  Given this fact, his counsel was not deficient for

failing to argue that the court should discount the weight of the actual

methamphetamine or that the court should vary downward because the drug

guideline was determined on the basis of actual, not generic, methamphetamine.

---

[12]  The plea agreement references 2,454 grams of actual methamphetamine, while the
Presentence Report references 2,488.6 grams.  To give Defendant the benefit of the doubt, the
court uses the lesser figure of 2,488.6 grams (again, the amount used to calculate the guidelines
in the Presentence Report).  *Compare* ECF No. 347 at PageID.1419 *with* ECF No. 420 at
PageID.2074, 2084.

*See Baumann*, 692 F.2d at 572 ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.").

## V.  CERTIFICATE OF APPEALABILITY

In denying the § 2255 Motion, the court must also address whether Defendant should be granted a certificate of appealability ("COA").  *See* R. 11(a) Governing § 2255 Proceedings in the U.S. Dist. Cts. (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient."  *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011).  The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further."  *Id*. (internal quotations and citation omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that a certificate of appealability should issue only if a prisoner shows, among other things, "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling").  The

standard "requires something more than the absence of frivolity but something less than a merits determination." *Hayward*, 603 F.3d at 553.

The court carefully reviewed Defendant's assertions and gave him every benefit by liberally construing them. He had the opportunity to explain his assertions in his reply to the government's response in opposition. Based on the above analysis, and considering all of the allegations in Defendant's § 2255 Motion and Reply, the court finds that reasonable jurists could not find the court's rulings debatable. Accordingly, a COA is DENIED.

## VI.  CONCLUSION

For the foregoing reasons, the court DENIES Defendant's § 2255 Motion, ECF No. 523, and DENIES a Certificate of Appealability. The Clerk of Court is directed to close the civil case file (Civ. No. 25-00059 JMS-RT).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 9, 2025



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

24